UNITED STATES v. CERTAIN INTERESTS IN LAND SITUATE IN FRANKLIN COUNTY, ILL., et al. (two cases).

Nos. 696, 887.

District Court, E. D. Illinois.

Jan. 9, 1945.

G. R. Schwarz, Sp. Atty., for Department of Justice, of Jerseyville, Ill., for the United States.

H. E. Morgan, of Christopher, Ill., for defendants Malone and others.

Robert W. Johnson, of Springfield, Ill., for defendant Jilek.

740

WHAM, District Judge.

The above designated suits for condemnation of an interest in separate parcels of real estate, while distinct as to parties and property involved, are related as regards the legislative and administrative authority under which the plaintiff seeks to proceed and substantially identical as to the defenses advanced in each in a motion to dismiss. A brief has been submitted by counsel in each case in support of the motion to dismiss but the plaintiff has filed its consolidated brief and requested that it be received and considered as applicable in both cases. The legal questions to be dealt with in the two cases being substantially identical, they will be considered together.

It is not questioned in either case but that at the time this suit was filed natural gas was intended to be and now is being and for an indefinite period will be carried through the pipes laid upon and under the ground in and over which the perpetual easement right is sought to be taken by the government under its right of eminent domain; nor is it disputed that the natural gas so carried is intended for use and is being used in the manufacture of supplies, namely, high octane gasoline, for the government to be used by it for war purposes. The facts appear to be, however, that such natural gas being and to be so used is not being and will not be conveyed by the government itself through said pipes, but is being and will be conveyed by a private corporation herein referred to as the Sunflower Company, from its source to mains which will carry it to said corporation's refinery, there to be manufactured by it into high octane gasoline for the government under a military contract between said corporation and the government. The Secretary of War has determined that it is necessary and advantageous to the government to acquire the rights of way in question in the form of a perpetual easement in order that said natural gas may be conveyed by said corporation and delivered to its manufacturing plant to enable said corporation to fulfil its said contract with the government. Documents showing such determination by the Secretary of War under legislative authority therein referred to have been filed in each case. Said Secretary of War has given appropriate directions to the Attorney General to proceed with these condemnation suits for the acquisition of said easements.

The principal bases for the motion to dismiss in each case are two: First, it is contended that the rights of way are being wrongfully acquired by the government through its power of eminent domain for the benefit of the Sunflower Company and not for a public use. Second, it is contended that the perpetual easements being condemned are not necessary, and therefore not within the authority of the applicable legislation, for the reason that temporary easements to last only until the end of the war and for a reasonable period thereafter would serve. Under both contentions it is urged that the government in seeking to take such perpetual easements by condemnation is exceeding both its constitutional and its legislative authority.

■ Relating to the first contention, it has been frankly stated by counsel for the government that it is the purpose of the government, after condemnation, to assign the rights of way to the Sunflower Company. Is such fact a defense here and does it follow that the taking is for the benefit of the private corporation rather than the government? The Sunflower Company has the natural gas and it has the manufacturing plant wherein the natural gas can be made into war supplies if it can be conveyed to such plant, but it is necessary in order to get the gas to said manufacturing plant to convey it through defendants' properties. It cannot get the natural gas through defendants' properties because it has been unable to reach an agreement with defendants for a right of way and has no power of eminent domain. Must the government having a contract for the manufactured product be helpless in such situation and the nation thereby be deprived of supplies needed to carry on the war? Both law and reason dictate that the answer must necessarily be in the negative. The Secretary of War has determined that the rights of way are required in order for the government to obtain the full benefit of its contract with said corporation for war supplies. The Secretary of War has been given power to acquire by condemnation or otherwise real property or temporary use thereof or other interest therein that shall be deemed necessary for military or other war purposes. Second War Powers Act of 1942, § 201, 50 U.S.C.A.Appendix, § 632. If there be any possible basis for deeming such acquisition to be necessary for such purposes no one can reasonably say that the

courts should have power to question his action. The nation would be seriously hampered in its ability and capacity to conduct a successful war were it possible to subject such administrative determinations to judicial inquiry. The Congress did not intend that the legislation here under consideration should contain any such practical weakness. The courts have consistently held under similar legislation that the courts are without power to conduct such inquiry. United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, at page 683 and cases there cited; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186.

It cannot be disputed in these cases that a provision for the conveyance of the natural gas in question to the Sunflower Company's manufacturing plant is directly related to the war effort by the contract between the government and the Sunflower Company. Such relation being both apparent and established, the determination by the Secretary of War that acquisition of perpetual rights of way for use in conveying such natural gas is necessary for military and war purposes plainly lies within the discretion given him by applicable legislation and may not be questioned in the courts.

■ The government's present purpose, if such it has, to convey or assign such rights of way to the Sunflower Company pursuant to what it may believe to be in furtherance of the war effort is a matter that can have no effect upon any right the government otherwise has to acquire such easements through its right of eminent domain. In view of the fact that the condemnation of the easements is deemed necessary for military purposes by the responsible authority set up by Congress, any plans which the government may have involving the subsequent disposition of the easements do not affect its legal right to proceed by way of condemnation. United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, at page 683, and cases there cited; United States v. Marin, 9 Cir., 136 F.2d 368; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171. As pointed out in plaintiff's brief the Secretary of War is given specific power to dispose of any property taken, by sale, lease, or otherwise. 50 U.S.C.A.Appendix, § 1171(b).

In United States v. 243.22, 2 Cir., 129 F. 2d 678, at page 683, the court in dealing with defenses similar to those advanced here, under kindred legislation for the benefit of the nation's military establishment, had this to say: "There was no error in denying appellant the bill of particulars and in excluding the offered proof. The alleged errors related to appellant's efforts to show that the Secretary of War was not acting in good faith and was abusing his powers in that, although, in accordance with the Act, he had stated that the taking of the land was necessary in the interest of national defense, he was proposing, pursuant to statute, to have the United States lease the land, with an option to purchase, to Republic Aviation Corporation, which is engaged in manufacturing airplanes for the United States. The decision of the Secretary of War is not open to judicial inquiry. That is fortunate, for if it were open, the ensuing delay would delight our country's enemies."

■ The fact that the government may not have conducted negotiations with the landowners in an attempt to acquire the easements constitutes no defect in or legal defense to the condemnation proceedings by the United States.

■ The extent of the interest which the government may acquire is measured only by what is deemed necessary by the Secretary of War. That is not a question for judicial determination. Indeed there are substantial reasons that might be advanced to support the view that a perpetual easement will serve the military purposes of the government better than would a temporary easement which by its terms would expire within a designated time after the end of the war. The uncertainty of how and when the war will end, the possible difficulties in determining the specific time of the war's end, or what will constitute an ending of the war in view of its many fronts and its probable aftermath, the indefinite time after the war during which emergency military necessities will continue with a corresponding need to renew and carry on the contract with the Sunflower Company, are among the contingencies which lend reason and support to the action of the Secretary of War in deciding upon the acquisition of a perpetual rather than a temporary easement.

I believe the charges of bad faith directed toward the Secretary of War by counsel in case No. 887 are wholly without foundation in the record and would be entitled to

no consideration even though this court had jurisdiction to conduct an inquiry into the motives of the Secretary of War in exercising power which has plainly been entrusted to him by the Congress.

 While it is not difficult to understand, humanly speaking, the unhappy feeling on the part of the defendants over the prospect of seeing the Sunflower Company obtain against their wills the use of perpetual easements over their lands through governmental intervention, it must not be overlooked that it is the government's necessities in time of war that are being and will actually be met by this action of the government. Nor must it be forgotten that in time of a war of the magnitude of that now being fought many unusual and unpleasant exercises of governmental power must be endured to avoid a fate many times worse. If at such time it be deemed necessary by the government for the benefit of the war effort that the Sunflower Company be enabled to convey natural gas from and through the lands of the defendants in order that the government may secure the war supplies to be manufactured from such natural gas, and if, to achieve that end, the government deems it necessary to acquire a perpetual easement over and through the lands of the defendants for use by the Sunflower Company, such action on the part of the government cannot justly be condemned as a move to benefit the private corporation as against the individual land owners. The government cannot at such a time concern itself with private disagreements which may have engendered feeling between the parties nor permit such disagreements to prevent it from securing such necessary supplies. The purpose and effect of these condemnation suits by the government has been and will be to aid in securing such needed supplies. If the suits when considered in the light of the controversy between the corporation and the defendants seem to play into the hands of the corporation, such result will be wholly incidental to the purpose of the government and will be no part of such purpose. The sole purpose of these condemnation suits by the government is to secure needed supplies and this has been and will continue to be the effect of the suits. The government has no other interest. The property owners will not be deprived of the interests taken by the government without just compensation. They will receive just compensation as measured under the law by the instrumentalities provided for that purpose. Their rights under the Constitution and the law enacted thereunder have not and will not be invaded.

Since the court is compelled to deny the motions to dismiss and to sustain the right of the government to proceed in the condemnation suits, it is suggested that in view of the comparatively small amounts involved an effort should be made by the parties to arrive at an agreement as to values which will eliminate the necessity for court contests and thus save loss of time and money and possibly arrive at results more satisfactory to all parties concerned than can be attained through litigation.

The motion to dismiss will be denied in each case and order entered therein accordingly.