**UNITED STATES of America,**
**Plaintiff,**

v.

**CERTAIN INTERESTS IN PROPERTY IN COUNTY OF CASCADE, State of Montana, Harsh Montana Corporation, a corporation of Montana, et al., Defendants.**

**Civ. No. 1952.**

United States District Court
D. Montana,
Great Falls Division.
June 20, 1958.

Krest Cyr, U. S. Atty., Butte, Mont., and Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Hutchinson, Schwab & Burdick, Portland, Or., and Church, Harris, Johnson & Williams, Great Falls, Mont., for defendant Harsh Montana Corp.

JAMESON, District Judge.

This is an action to condemn a leasehold interest (and all other right, title and interest) of the defendant Harsh Montana Corporation in and to a Wherry family housing project located at Malmstrom Air Force Base, Great Falls, Montana. The action is brought pursuant to the Housing Act of 1956, approved August 7, 1956 (Public Law 1020–84th Congress, 2nd Session), as amended by the Act of Congress approved July 12, 1957 (Public Law 85–104–85th Congress, 1st Session), requiring that the Secretary of Defense acquire, by purchase or condemnation, all Wherry housing units located at military installations where construction of Capehart family housing has been approved.

The proceeding was instituted November 1, 1957. There was filed with the complaint a declaration of taking executed October 10, 1957 by the Undersecretary of the Air Force, in which the compensation was estimated at $1.00. An amendment to the declaration of taking was filed January 29, 1958, substituting the sum of $75,000 as the estimate of just compensation. The sum of $1.00 was deposited with the Registry of this Court on November 1, 1957 and the additional sum of $74,999 on January 29, 1958.

Prior to the filing of the amendment to the declaration of taking, the defendant Harsh Montana Corporation filed a motion to set aside and vacate the declaration of taking and order for delivery or possession. Subsequent to the amendment, a motion was filed to strike the amendment to the declaration of taking. The defendant has also filed a motion for appointment of commissioners to determine the issue of just compensation and a brief urging the Court to enter an order directing negotiations between the Air Force and defendant under the Housing Act of 1957 as a condition precedent to plaintiff's right to proceed in condemnation. All motions are resisted by plaintiff.

Motions to Set Aside and Vacate Declaration of Taking and to Strike Amendment to Declaration of Taking

 The motion to set aside the original order of taking was based on the ground that the sum of $1.00 estimated as just compensation was on its face "plainly inadequate, sham, frivolous and a mere simulated and token compliance". The motion to strike the amendment was based upon the grounds that the amendment was filed without service upon defendant and without leave of Court, and that the amendment did not allege facts from which the Court could conclude that the estimate of just compensation was "other than a repeti-

tive, inadequate, sham, frivolous, and a mere simulated and token compliance."

While plaintiff should properly have obtained leave of Court to make the amendment to its declaration of taking, such leave would have been granted and the amendment does not in any way prejudice defendant. There is no evidence that plaintiff acted in bad faith or that any substantive right of defendant was affected by the amendment. See United States v. 44.00 Acres of Land, etc., 5 Cir., 234 F.2d 410,[1] and cases there cited. Accordingly, it is my opinion that both motions should be denied.

### Paragraph III(a) of Answer

As a defense to the taking, defendant alleges in paragraph III(a) of its answer that the complaint fails to state a claim, because plaintiff failed and refused to enter into negotiations with defendant to acquire the project as a condition precedent to the institution of this action, pursuant to the Housing Act of 1956 as amended by the 1957 Act.

The facts as presented by affidavits of Harold J. Schnitzer, president of Harsh Montana Corporation, and as evidenced by letters attached to plaintiff's brief are, briefly, these:

On November 7, 1956, Schnitzer, as president of Harsh Montana Corporation, received a letter from the Department of the Air Force informing him that acquisition of the 400 unit Malmstrom Wherry Project would be mandatory and requesting that he advise them "whether you desire to negotiate the disposal of your interest", and, "your offer as to terms acceptable to you."

Schnitzer replied on December 4, 1956, stating, "This corporation does desire to negotiate with you * * *"; and provided other requested information. The parties arranged a negotiation conference which was held in Washington, D. C. on April 11, 1957.

At that conference there were two points of disagreement: (1) the proper replacement cost of the project, from which there would be deducted the mortgage balance and an appropriate allowance for physical depreciation in arriving at the acquisition price; and (2) the method or formula to be followed in arriving at the appropriate allowance for depreciation.[2]

---

1. On the points at issue here, the court said: "However, the district court had no power to set aside the first amended Declaration of Taking, and its order so doing is void. (citing United States v. Hayes, 9 Cir., 172 F.2d 677, 679; and United States v. Carey, 9 Cir., 143 F. 2d 445, 448–450.) We may concede, *arguendo*, that a court has jurisdiction to vacate a Declaration of Taking where, contrary to the implied requirements of the statute, the estimate of the value of the condemned property is made by the Government in bad faith. But here the estimate was raised to an amount which the evidence shows to have been arrived at in good faith. Indeed, the court later refused to set aside a Declaration with the same estimate. It is true that the Government did not secure the permission of the court before it amended its Declaration of Taking by increasing the estimated value of the property. It is likewise true that orderly procedure requires that it obtain leave of the court to make such an amendment. But the court should have granted the Government such leave, since the amendment could not possibly prejudice the land owner. United States v. 1,997.66 Acres of Land, More or Less, etc., 8 Cir., 137 F.2d 8; United States v. Certain Land in Centerline, D.C.E.D.Mich., 47 F.Supp. 320. Before granting the motion to vacate the Declaration, the court was well aware of the fact that the Government had amended it. Yet it chose to rest its decision vacating the Declaration on the unamended Declaration of Taking with its lower estimate of value. We think the court erred in thus ignoring the amended Declaration and, since there was no other allegation that the Government acted without statutory authority, the court was without power to vacate and set aside the Declaration of Taking as amended." 234 F.2d at pages 415–416.

2. Pertinent legislation as to acquisition procedures under which the negotiations of April 11, 1957 were carried on provided in part: "(a) Whenever the Secretary of Defense or his designee deems it necessary * * * he may acquire by purchase, donation, condemnation, * * any land or (with the approval of the

The discussion concerning the proper figure for replacement cost of the project as of the date of final endorsement for mortgage insurance continued by correspondence after April 11, 1957. Defendant contended that the Federal Housing Commissioner failed to properly revise the replacement estimates as of the date of final endorsement. The Air Force used an estimate of $3,658,-308 for negotiations. Defendant contended the correct replacement figure under the Act was $4,111,282. From these figures there was to be deducted an amount of approximately $3,023,496.-78 as of November 1, 1957 (the date of taking), representing the mortgage balance.

The parties in their correspondence failed to reach an agreement. By letter of June 14, 1957 defendant was informed that "the Federal Housing Administration has confirmed the original figure of $3,658,308 as their final estimate of the replacement cost and to be used in negotiation in accordance with Public Law 1020. In view of the above determination this office has assumed that continued negotiation will be futile and has instituted condemnation proceedings." Defendant replied by letter of June 19, 1957, in part "* * * it is now evident that such negotiations will not result in a price which we deem to be reasonable and fair. We, therefore, concur with you that condemnation proceedings should be instituted * * * We will cooperate with you to the fullest extent possible and request that you advise us of your estimated date on which you plan to take over the operation of the project."

In his affidavit of April 10, 1958, after reciting the negotiations with respect to replacement cost, Schnitzer says: "The more basic difference between myself and the representatives of the Department of Air Force related to the allowance for depreciation which the Air Force sought at the April 11, 1957 meeting. I contended that the allowance for the physical depreciation as used in the 1956 Housing Act meant that the Air Force was entitled to deduct from the FHA estimated replacement cost, as of the date of final endorsement of the mortgage note, a sum sufficient to place the property in sound physical condition and cited the congressional history of the 1956 Housing Act as my authority for this position. The Air Force, on the other hand, took the position that there

Federal Housing Commissioner) any housing financed with mortgages insured under the provisions of sections 1748–1748h of Title 12 as in effect prior to August 11, 1955. The purchase price of any such housing shall not exceed the Federal Housing Commissioner's estimate of the replacement cost of such housing and related property (not including the value of any improvements installed or constructed with appropriated funds) as of the date of final endorsement for mortgage insurance reduced by an appropriate allowance for physical depreciation, as determined by the Secretary of Defense or his designee upon the advice of the Commissioner: *Provided*, That in any case where the Secretary or his designee acquires a project held by the Commissioner, the price paid shall not exceed the face value of the debentures (plus accrued interest thereon) which the Commissioner issued in acquiring such project.

"(b) Notwithstanding any provision of subsection (a) of this section to the contrary, the Secretary of Defense or his designee shall, in the manner provided by subsection (a) of this section, acquire by purchase, donation, or other means of transfer, or if the parties cannot agree upon the terms for acquisition by such means, by condemnation, any housing * * * which is located at or near a military installation where the construction of housing under the Armed Services Housing Mortgage Insurance Program had been approved by the Secretary.

"(c) Condemnation proceedings instituted pursuant to this section shall be conducted in accordance with the provisions of section 257 of Title 40, or any other applicable Federal statute. Before any such condemnation proceedings are instituted, an effort shall be made to acquire the property involved by negotiation * * *". Title 42 U.S.C.A. § 1594a (Housing Act of 1956, § 512, P.L. 1020, 84th Congress.)

were literally no limitations imposed upon it as the result of the 1956 Housing Act and as a consequence the deduction claimed by the Air Force was over 16 times as large as the figure proposed by me. I had obtained a survey from a Great Falls contractor for the purpose of correcting all deficiencies in the project and to restore the same to sound physical condition and had an estimated cost for this work in the sum of $23,233. The figure asserted by the Air Force was $368,616."

On July 12, 1957, Congress approved the Housing Act of 1957 (P.L. 85–104), § 504, 71 Stat. 303, 42 U.S.C.A. § 1594a which provided that:

"Section 404(a) (42 U.S.C.A. § 1594a(a)) of the Housing Amendments of 1955 is amended by striking out 'an appropriate allowance for physical depreciation' and inserting in lieu thereof 'an appropriate allowance representing the estimated cost of repairs and replacements necessary to restore the property to sound physical condition'."

Of the 1957 amendment, Schnitzer states in his affidavit:

"However, when the 1957 Housing Act was passed, it, in my opinion, completely clarified the allowance for physical depreciation. It was confined to the cost of restoring the property to sound physical condition; exactly the position I had previously taken on April 11, 1957, during the conference. I received no further communications from the Department of Air Force after the effective date of the 1957 Housing Act and without any further notice to me on November 1, 1957 condemnation was instituted in the above case."

Neither party requested further negotiations after the passage of the 1957 Act.

Negotiations between the Air Force and defendant had broken down on two points: (1) the estimated replacement cost; and (2) the appropriate allowance for depreciation. Defendant concedes in its brief in support of paragraph III(a) of its answer that any adjustment with respect to replacement cost could be made only by the Federal Housing Commissioner, and that the Air Force, sometime after the negotiation conference, was advised by FHA that the revision would not be made. As counsel state, "This ended the matter". Defendant now relies solely upon its contention that it was entitled to negotiate further with respect to the allowance for depreciation by reason of the 1957 amendment.

There is no evidence that defendant, prior to the institution of this action, either (1) advised plaintiff that it had abandoned its contention with respect to the estimated replacement cost; or (2) that it desired to negotiate further with respect to the depreciation allowance. Had defendant done so, a different situation would be presented.

Defendant contends that it was entitled to bona fide negotiations prior to condemnation; that defendant was prevented from such negotiation by a misinterpretation of the 1956 law by the Air Force, which was clarified by the 1957 amendment; that if the formula prescribed by the 1957 amendment is followed, successful negotiations will result; and that the court should direct negotiations between the Air Force and defendant under the 1957 Act as a condition precedent to plaintiff's right to proceed in condemnation.

Plaintiff contends that there were bona fide negotiations under the 1956 Act; that further negotiations would have been futile; and that the statute simply prescribes a maximum which may be paid by the Air Force and that there is no mandatory requirement to follow any "formula price".

Three questions accordingly are presented: (1) Were bona fide negotiations conducted under the 1956 Act? (2) Was plaintiff obliged to renew negotiations subsequent to the passage of the 1957 Act, prior to instituting this action in

condemnation? (3) Did the 1957 Act prescribe a mandatory formula for determination of the purchase price?

■■ It is clear that in the absence of constitutional or statutory provisions directing it, an attempt to reach an agreement with the owner for purchase of property is not a condition precedent to condemnation proceedings. Via v. State Commission on Conservation, etc., D.C.W.D.Va.1935, 9 F.Supp. 556, 563; United States v. Certain Interests in Land, etc., D.C.E.D.Ill.1945, 58 F.Supp. 739, 741; 29 C.J.S. Eminent Domain § 224, p. 1163; Lewis on Eminent Domain (1st Ed.) Sec. 301. Where the statute does require an attempt to purchase prior to condemnation, it is not necessary that there be an "absolute inability" to acquire the property by contract, but only that there be a bona fide effort on the part of the condemnor. Wilson v. Union Electric Light & Power Co., 8 Cir., 1932, 59 F.2d 580, and cases there cited. "It is sufficient if the negotiations proceed far enough to indicate that an agreement is impossible, and, where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary." 29 C.J.S. Eminent Domain § 224, p. 1168. After an unsuccessful attempt has been made, ordinarily a second effort is not necessary. 29 C.J.S. Eminent Domain § 224, p. 1166.

Guided by these general principles, the answer to the three questions here presented must be found in the Housing Acts of 1956 and 1957 and the legislative history of these Acts.

■ It will be noted that the Housing Act of 1956 (Subsection (a) of Sec. 1594a, 42 U.S.C.A., supra) provides that the "purchase price of any such housing shall not *exceed* \* \* \*" what may be termed the formula price. In other words, even though the formula is followed, the resulting price represents a maximum figure, and neither party is bound to accept that figure.

It is true that the 1957 Act modified and clarified the provision of the 1956 Act with respect to the proper allowance for depreciation. Of the 1957 amendment, the defendant says in its brief: "It (the amendment) accomplished what Congress thought it had done in the Housing Act of 1956", citing House Report No. 2363 on the 1956 Act, page 4553 U.S.Code Congressional and Administrative News 1956: "Your committee also wishes to make it clear to the Commissioner that the appropriate allowances to be made for physical depreciation under the formula are intended to be composed of the amounts to cover (1) the estimated cost of repairs and replacements immediately necessary to restore the property to sound physical condition, and (2) an allowance for accrued deterioration of items requiring periodic maintenance, repair, and replacement in the future." [3]

3. The Conference Report on the Housing Act of 1957 made the following comments with respect to the changes in the formula for purchase of Wherry Housing:

"The House bill contained a provision eliminating the 'allowance for physical depreciation' as one of the factors used in determining the purchase price of Wherry Act housing acquired under the 1955 Housing Amendments, and substituting an 'appropriate allowance representing the estimated cost of repairs and replacements immediately necessary to restore the property to sound physical condition.' No similar provision was included in the Senate amendment. The conference substitute retains the language of the House bill, except that the word 'immediately' is omitted from the phrase last quoted above.

"This word was included in the House bill to indicate that in determining whether a deduction should be made for needed maintenance items, only those items which are past due should be considered. For example, if a project normally needs painting every 2 years, a deduction shall be made if 2 years have elapsed since it was last painted, but not if only 1 year has elapsed. While the conferees agreed to this principle, they felt that the word 'immediately' might have broader implications, and accordingly deleted it in order to make sure that all costs of repairs and replacements needed to put the project in first-

The reasons for the provisions of the 1956 Act relating to acquisition of Wherry Housing are set forth in the House Committee Report at page 4533 of U.S.Code Congressional and Administrative News, 1956, 84th Congress 2nd session. The report reads in part: "The key question, of course, is the price to be paid for the sponsor's interest. Your committee has studied this matter carefully and we believe that the purchase price formula in the bill is the best possible solution for acquisition through negotiation. * * * Accordingly the bill would provide that upon request of the Secretary of Defense or his designee the FHA Commissioner would determine the price to be paid for the sponsor's interest in such housing. The Commissioner would use his estimate of replacement cost as of the date of final endorsement for mortgage insurance reduced by the value of improvements installed or constructed with appropriated funds; or the actual cost, as defined in section 227(c) of the act if the actual cost is less than the Commissioner's estimate. The Commissioner would then further adjust either his estimate of actual costs as determined by him to current costs using cost indexes presently available to him. This amount would then be reduced by an appropriate allowance for physical depreciation. The amount remaining would represent the purchase price of the housing project. To determine the value of the lessee's interest it would be necessary for the Commissioner to ascertain the difference between the purchase price as determined by him and the outstanding principal obligation (the mortgage), plus accrued interest. * * *

"*Your committee desires to make it most clear that neither the Secretary of Defense, or his designee, nor the lessee are required to accept the price determined by the Commissioner under the formula* contained in subsection (c) of the bill. If such price is rejected by either party it is expected that the Sec-

class condition will be included." U. S. Code Congressional and Administrative

retary of Defense, or his designee, will proceed to acquire such project(s) through condemnation."

The Conference Report (p. 4579, U.S. Code Congressional and Administrative News, 84th Cong. 2nd Session 1956) recognized that: "Provision was made, however, that if the project actually cost less than the original mortgage amount *or if the buyer or seller could not agree on price*, then condemnation proceedings had to be started for acquisition of the project." (Emphasis supplied.)

The Housing Act of 1956 required negotiations prior to condemnation. It is my opinion that the evidence discloses bona fide negotiations by both parties pursuant to that Act. These negotiations terminated in disagreement, and both parties agreed that an action in condemnation would be necessary. Either party could properly have requested further negotiations subsequent to the 1957 amendment. Neither did so prior to the filing of this action, some three and one-half months later. In my opinion, under the circumstances here presented, there was no obligation on the part of plaintiff to initiate such negotiations prior to this action. It is true the 1957 amendment clarified the provision for depreciation, but even though the formula therein prescribed were followed, the resulting price would not be conclusive and could be rejected by either party. Accordingly, I do not feel justified in directing further negotiations as a condition precedent to condemnation.

### Should the Issue of Just Compensation be Referred to Commissioners?

Rule 71A(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides in part that where there is no specially constituted tribunal for the determination of the issue of just compensation, "any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allow-

News, 85th Congress, 1st Session, 1957, page 1355.

ed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for any other reasons in the interests of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. * * * Trial of all issues shall otherwise be by the court". The plaintiff has filed a demand for a trial by jury. The defendant Harsh Montana Corporation has filed a motion for appointment of Commissioners and contends that the "character, location and quantity" of the property involved, and other reasons, require reference to commissioners in the interest of justice.

■ As stated in Moore's Federal Practice, Vol. 7, p. 2793, Sec. 71A.90(3): "The cast of the Rule favors jury trial of the issue of just compensation, where any party, condemnor or condemnee, files timely demand therefor; but the Rule is flexible and the district court, for good cause shown, may refer the issue of just compensation to a commission."

This rule was construed by the Court of Appeals of the Tenth Circuit in United States v. Waymire, 1953, 202 F.2d 550, 552, as follows: "Under such provision in the rule, any party to a condemnation proceeding is ordinarily entitled as a matter of right to trial by jury of the issue of just compensation * * * if demand therefor is made within the time fixed * * * and where the demand is seasonably made, its denial constitutes error unless, due to the character, location, or quantity of the property to be condemned, or some other reason in the interest of justice, the court in the appropriate exercise of its sound judicial discretion appoints a commission * * *. But in the exceptional case where extraordinary circumstances or conditions exist with respect to the character, location, or quantity of the property to be condemned, or for other reason in the interest of justice, the court may in its discretion appoint

a commission to determine the issue of just compensation."

■ This case involves one condemnee and the property is located within a few miles of the place of trial. The property consists of a tract of land of approximately 40 acres, containing 400 housing units, with additional areas of roadway, waterline, and sewer right-of-way. An almost identical situation was presented in United States v. Fairfield Gardens, 21 F.R.D. 370, 371, decided by the District Court of the Northern District of California on January 17, 1958. That action involved the defendant's leasehold interest in a tract of land at the Travis Air Force Base at Fairfield, California, including some 980 dwelling units used to provide housing facilities for base personnel, together with "administrative facilities, carports, roadways and related incorporeal interests." There, as here, the plaintiff had demanded a jury trial, and the defendant had moved for a referral of the issue of compensation to commissioners. In denying the motion for referral to commissioners, the court said in part:

"In the instant case there is but *one condemnee, one parcel of land, and, essentially, but one tract of land.* Granted, there is a quantity of detail in connection with the factors which underlie an accurate valuation of the defendant's interest herein, but this, alone, is insufficient to persuade this Court that a more fair result would be obtained by the commission procedure. Furthermore, the various interests of the defendant incident to the basic leasehold, although substantial in number, lend themselves to fairly definitive categorization.

"* * * Only in cases of most extraordinary character, where the ends of justice require such a course, will there be any deviation from this rule (the right of parties to a jury trial when it is desired). As pointed out above, this case may prove to be somewhat complicated, and dif-

ficult of determination, but it does not reach the extraordinary character which would justify its reference to a commission."

This decision, of course, is not controlling on this court, but it is most nearly in point of all of the cases cited in the able briefs filed by counsel for both parties. In one other case involving properties used by an Air Force base, United States v. 1146.32 Acres of Land, D.C.S.D.Tex.1955, 132 F.Supp. 681, the trial court referred the issue of just compensation to commissioners, and the Court of Appeals of the Fifth Circuit affirmed (United States v. Buhler, 254 F.2d 876). The properties involved in that action were more varied and extensive, and the trial court held that the appointment of a commission was warranted because of the exceptional "character" of the property.

This case is distinguishable from those cases where the property is located at considerable distance from the place of trial, so that it would be difficult for the jury to view the premises,[4] as well as cases where reference to commissioners has been justified by reason of a large number of condemnees [5] and cases where the property is subject to many and varied uses.[6]

Defendant contends that "the issues of this case are such that they should be submitted to technically trained commissioners who will have the time to gather, consider and evaluate the complicated evidence that will be offered, rather than to a jury of twelve citizens."

Defendant specifies, among the complexities of the case, "the distinction between the condemnation of fee titles (not here involved) and this case wherein a 75-year leasehold interest is involved, subject, however, to a 33-year mortgage and a 50-year, 6-month termination provision in favor of the lessor on complicated terms and conditions." Defendant argues that it may be necessary to use complicated formulas involving capitalization of income, and that reliance must be placed upon "the replacement cost method of determining fair market value involving difficult and theoretical depreciation factors." It is true that in some cases the reference to commissioners has been based primarily upon the fact that technical and complex testimony would be required to establish just compensation.[7] Other cases have held that this factor alone is not sufficient to warrant submission of the issue of just compensation to commissioners. This viewpoint was expressed in United States v. 4.16 Acres of Land, etc., D.C.N.D.Cal.N.D. 20 F.R.D. 89, 90, where the court said in part: "Granted that in this case the evidence bearing on the replacement costs of the bridge and road facilities condemned by plaintiff will, of necessity, be of a technical nature, that, of itself, is not a sufficient reason to warrant the conclusion that a jury is any less capable of reaching a fair and reasonable figure than a commission. To entertain doubts about a jury's ability to understand and apply in a fair manner the testimony of technical experts is to tacitly admit that

4. United States v. Wallace, 10 Cir., 1952, 201 F.2d 65.

5. United States v. 1,616.97 Acres of Land, etc., D.C.S.D.Iowa, 1955, 18 F.R.D. 96; United States v. 2792.82 Acres of Land, etc., D.C.E.D.S.C., 1953, 115 F.Supp. 76; and see United States v. 3928.09 Acres of Land, etc., D.C.W.D.S.C., 1951, 12 F.R.D. 127. See also Supplementary Report of the Advisory Committee to the Supreme Court recommending adoption of subsection (h) of Rule 71A, Fed.Rules Civ. Proc., 28 U.S.C.A. particularly with respect to the experience of the Tennessee Valley Authority.

6. United States v. Waymire, 10 Cir. 1953, 202 F.2d 550; United States v. Chamberlain Wholesale Grocery Co., 8 Cir., 1955, 226 F.2d 492, certiorari denied, 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855; United States v. Cunningham, 4 Cir. 1957, 246 F.2d 330; United States v. 1,584.11 Acres of Land, etc., D.C.E.D.S.C.1956, 141 F.Supp. 720.

7. United States v. 4.43 Acres of Land, etc., D.C.N.D.Tex.1956, 137 F.Supp. 567; United States v. 15.3 Acres of Land, etc., D.C.M.D.Pa., 17 F.R.D. 337.

the jury system is effective only in the most simple cases."

Admittedly this is a close case. Balancing all of the factors involved in determining whether there are exceptional circumstances which would justify reference of issue of just compensation to commissioners, it is my opinion that the technical nature of the testimony and complexity of the factors underlying a determination of value are not sufficient in themselves to warrant reference to commissioners, particularly in view of the fact that there is but one condemnee, the proximity of the property to the place of trial, and the limited nature and use of the facilities.