The Commonwealth of Puerto Rico, etc., Plaintiff and Appellee, *v*. Mercedes de la Torre, Defendant and Appellant.

No. 347. Decided March 21, 1963.

*Otero Suro & Otero Suro* and *Ismael H. Herrero, Jr.,* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Arturo Estrella, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On July 10, 1958 the Commonwealth of Puerto Rico filed in the Superior Court, San Juan Part, a condemnation proceeding to acquire a parcel of land of 134 thousandths cuerda, equivalent to 526.63 square meters, owned by defendant Mercedes de la Torre, and it deposited the sum of $5,500 as fair and reasonable compensation. The proceeding was brought under the authority of the General Condemnation Act of

March 12, 1903, as amended, 32 L.P.R.A. §§ 2901–13, and specifically under Act No. 19 of April 8, 1942,[1] 22 L.P.R.A. § 191 *et seq.* The lands were devoted to the construction of an electric power distributing center.

The parcel object of the proceeding, the acquisition of which was authorized by the Puerto Rico Planning Board in a report of June 4, 1958, was segregated from a certain property having a larger area which is recorded at folio 72, volume 108 of Río Piedras, and is described as follows:

"URBAN: Parcel of land situated in the ward of Monacillos (now Gobernador Piñero) of San Juan, owned by Mercedes de la Torre, having an area of 0.1340 cuerda, equivalent to 526.63 square meters, and bounded: on the north and west by lands of the Water Resources Authority; on the south by lands of the Water Resources Authority and state highway No. 2; and on the east by lands of Mercedes de la Torre."

From the blueprints attached to the complaint it appears that the lot taken consists of two parcels, both of which front state highway No. 2, having an area of 500.10 and 26.53 square meters.

On August 25, 1958 defendant withdrew the balance of the sum on deposit amounting to $4,852.74, after consenting to the retention of the sum of $647.26 for property taxes due the public treasury. She formulated an answer alleging that the fair and reasonable value of the parcel taken amounted to $25,000, excluding the sum of $2,500 which had been delivered to her "through the Puerto Rico Water Resources Authority, *the real plaintiff.*"

At the commencement of a hearing set for December 14, 1959, the Commonwealth informed that after a "restudy [*sic*]

---

[1] It refers to the Act creating the Puerto Rico Water Resources Authority which, in enumerating in § 6 the powers of the agency, expressly provides in subd. (*j*): "Acquire in the manner set forth in subsection (*h*) hereof ['by purchase, whether by agreement or by the exercise of the power of eminent domain, lease, bequest, devise, gift'] any property, real . . ." 22 L.P.R.A. § 196(*j*).

of the assessment made," [2] it moved to amend the allegations to the effect that the compensation to which the owner was entitled amounted only to $868.93. The trial court permitted verbally the amendment, which action was confirmed the following day by a written order directing that the complaint be amended in the sense that the sum of $868.93 was the fair compensation, and further ordered defendant to reimburse the difference of $4,631.07. A check for that amount was issued on February 19, 1960, to the order of the Water Resources Authority, out of the sum deposited in favor of appellant in another condemnation suit filed under No. E-60-59.

The case went to trial. It was stipulated that in the event "the contract is not valid" to which reference is made hereinbelow, the market value of the described parcel was $10,700 on the day of the taking. The "contract" to which the parties refer is deed No. 26 of April 19, 1948, executed before Notary Antonio M. Bird, entitled "Segregation, Sale and Establishment of Servitude." We sum up the principal covenants agreed upon by the executing parties—the Puerto Rico Water Resources Authority and Mercedes de la Torre— by virtue of the said instrument: (a) from the two parcels of land of 19.79 cuerdas and 2,085.30 square meters, Mrs. de la Torre segregated 5.439 cuerdas, 76.18 square meters, and 765 square meters, and sold them to the Authority "for the agreed price at the rate of $1.65 per square meter," namely, for the total price of $36,663.15; (b) "for and in consideration of the sum of one dollar ($1.00)," Mrs. de la Torre constituted a perpetual servitude of air for the installation of the Authority transmission lines over two parcels of 512.94 and 500 square meters, binding herself not to erect any structures on the former and to devote it exclusively to the laying

[2] Appellant's attorney explained that the reduction in the compensation was not due to further consideration of the valuation, "but that it is seeking within this proceeding to enforce an agreement between defendant herein and the Water Resources Authority of 1958 [sic]."

out of a street, it being further provided that if no such street was laid out, the owner bound herself to sell the parcel to the Authority for the unit price already mentioned; and, as to the latter, not to erect thereon any structure of more than one story and never higher than 12 feet. As to the latter parcel—that of 500 square meters—an additional covenant was included, the effectiveness of which is invoked by the Commonwealth for the purpose of fixing the value in this proceeding. It reads as follows: "Should the owner decide to sell the said parcel 'G,' she shall give preference to the Authority to acquire the same for the price of One Dollar and Sixty-five Cents ($1.65) per square meter."

In the judgment rendered by the trial court it is stated that the restrictions and limitations agreed upon as to this parcel of 500 square meters "encumbered the same to such an extent that unless the W.R.A. expressly waives the rights thereto which it had acquired *upon payment of consideration*, its market value remained static, unchanged. The value of the parcel taken was not enhanced by the increase in value of all the lands adjacent and similar to that parcel which were not restricted by any encumbrance whatsoever," and it insisted that the restrictions, limitations and encumbrances referred to "and which encumber the parcel" were not taken into consideration in the original valuation of $5,500. It therefore held that the market value of the parcel of 500 square meters was at the rate of $1.65 per square meter, or $825, and that the value of the other parcel of 26.63 square meters was at the rate of $20 per meter, or $532.60.

■■ Appellant contends that the trial court erred in admitting in evidence certified copy of deed No. 26 *supra* without any basis to support its admission, and in applying the terms thereof to the parcel taken which is different from that described in said deed. From the statement of facts set forth in this opinion it appears that an amendment to the complaint was timely permitted in order to allege the

decrease in the compensation deposited at the time the action was brought, the purpose of which was to conform the same to the State's theory on the virtuality and efficacy of the deed in question to which reference was expressly made in the course of the hearing held on December 14, 1959. It is true that the amendment was not made in writing;[3] however, the fact itself that defendant filed an answer to the amended complaint shows that she was apprised at all times of the clear meaning of the order of the trial court permitting the amendment. We point out in passing that Rule 58.6 of the Rules of Civil Procedure of 1958, 32 L.P.R.A. (1961 Supp.), p. 171, authorizes plaintiff in a condemnation proceeding to amend the complaint at any time before the trial of the issue of compensation and as many times as desired.[4] It further provides that plaintiff need not serve a copy of an amendment, but shall serve notice of the filing upon the adverse party. *Cf. United States* v. *Certain Interests in Property in County of Cascade*, 163 F. Supp. 518 (Mont. 1958). As to the second aspect of this first error assigned, we can not agree with appellant on the lack of identity of the parcel taken and of the parcel referred to in the covenant contained in the oft-mentioned deed. A brief examination of the blue-prints attached to the complaint and which was made a part of the deed shows that the parcel of 500 square meters is included *entirely* within the parcel taken and that only a small adjacent parcel of 26.63 square meters has been consolidated with it. This was expressly admitted by the defense attorney

---

[3] In exhibit A attached to the complaint which contains a description of the parcel object of the appeal, the identity of the persons having an interest in the proceeding and the amount of the compensation, there appears a note written in ink which reads "$868.93" over the typed $5,500. Although it is not initialled by the judge nor by the parties, it could be inferred that that note is the amendment.

[4] In the federal procedure the corresponding rule—Rule 71A—provides that the pleadings may be amended without leave of court. This phrase was eliminated in the local rule. See, in this connection, 7 Moore, Federal Practice 2784-86 (2d ed.); 3 Barron and Holtzoff, Federal Practice and Procedure 563, § 1523.

in stating that "parcel G is included in the land taken" (Tr. Ev. 6).

The second error challenges the trial court's conclusion that the valuation of the parcel of 500 square meters is governed by the agreement made by the parties in 1948, irrespective of the fact that it is admitted that its market value on the taking date, in the absence of said agreement, was at the rate of $20 per square meter. Appellant contends that this is just a promise to sell, a "preference agreement" subject to the specific condition that the promisor should decide to sell the parcel referred to therein, and that the Commonwealth of Puerto Rico, which is a plaintiff and an entity distinct from the Water Resources Authority in whose favor the promise was executed, may not avail itself of the terms thereof.

In fact, the agreement made by the parties to deed No. 26 may be considered as a promise to sell, § 1340 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3747; *Rullán* v. *Registrar*, 67 P.R.R. 658 (1947),[5] unilateral, *Collazo* v. *Conesa*, 70 P.R.R. 144 (1949) ;[6] cf. *Rossy* v. *Superior Court; Heirs of Lloréns, Ints.*, 80 P.R.R. 705 (1958) ; *Caballero* v. *Kogan*, 73 P.R.R. 617 (1952) ; see, also, *García* v. *De Jesús*, 79 P.R.R. 139 (1956). DE CASSO AND CERVERA [7] state that this preparatory contract should meet the requirements common to every contract—capacity, object and external form—and also the special ones relative to the determination of the contents of

---

[5] "It is agreed . . . that whenever Doña Esperanza Rullán should decide to sell the parcel covered by the within deed of sale, she shall be bound to offer it for sale to the vendors, at the same price which she is paying therefor."

[6] ". . . while the present lease is in force, the lessees shall be entitled to acquire the property leased for the price of $8,500 . . . Should the lessors have the intention of selling the leased property to another person for a sum in excess of the $8,500 . . . they shall notify in writing to the lessees . . . the offer made to them, the lessees being bound to decide whether or not they purchase the property leased . . . during the term of thirty days . . ."

[7] *Diccionario de Derecho Privado* 3146, Editorial Labor (1954).

the principal contract and the term or period to execute the same. As to the object, which "is the ultimate conclusion of the final contract the execution of which is not desired or can not be made for the moment," they add that the object of the definite contract should be "possible, *licit* and determinate or determinable." [8] It is precisely the illicitness of the object of the final contract what precludes recognition of virtuality to the agreement in question, which illicitness arises from the fact that it is contrary to the provisions of § 24 of the Planning Act, No. 213 of May 12, 1942, as amended, 23 L.P.R.A. § 25, for it affects a parcel of land of which the promisor or seller could not dispose at the time of making the agreement because it was part of a piece of property having a larger area, the segregation of which had not been previously authorized by that agency. [9] As to a contract of sale, this was our holding in *Soto* v. *Feliciano*, 80 P.R.R. 595 (1958), in which we said, copying from the headnotes, "a sale executed in violation of a legal prohibition predicated on reasons of public policy—sale of a lot segregated without having obtained permission from the Planning Board —as well as subsequent conveyances of the lot are *absolutely void*."

■ On the other hand, we can not agree with the trial court that the agreement made in 1948 had the effect of freezing indefinitely the market value of the parcel of 500 square meters, even for condemnation purposes. We con-

---

[8] For an interesting discussion on the difference between the contract of promise to sell and the contract of option, see MÉZQUITA, *El pacto de opción y el derecho que origina*, 24 Revista Crítica de Derecho Inmobiliario 164 *et seq.* (1951).

[9] In fact, it was not until February 5, 1958 that the Planning Board approved the Authority project to purchase a parcel of 500.10 square meters, and, specifically, the segregation of such parcel, without having to comply with the provisions of the Subdivision Regulations and the presentation of a registration plan.

This order was subsequently amended by the order of June 4, 1958, authorizing the acquisition of a parcel of 526.63 square meters, which includes the parcel of 500.10 square meters.

cede that there is no merit in appellant's contention in pretending to distinguish between the condemnor and the authority beneficiary of the agreement, since, as stated hereinabove, the condemnation proceeding was interposed under the provisions of law which permit the Water Resources Authority to exercise the power of condemnation, the purpose of the taking is for the sole benefit of the latter's activities, and even defendant herself admitted that that agency was the "real plaintiff" in the action. However, the very terms of the agreement defeat its application to the condemnation case, since there is no voluntary sale involved but a forcible seizure of the property which the owner can not resist even though her intention is not to dispossess herself of the real property. If the agreement were valid, it would play no role in this proceeding, since the exercise of the benefit or preference granted to the Authority is clearly conditioned on "should the owner decide to sell." Nor do we accept the trial court's construction which connects the principal transaction agreed upon in deed No. 26—the sale by Mrs. De la Torre of three parcels to the Authority for $36,663.15—with other agreements, including the agreement sought to be applied in this action, which were set forth therein. Actually they are different transactions, in which the only nexus is that the same parties intervene and that they are embodied in the same public instrument. A reading of the deed reveals that the sale is not made to depend, in whole or in part, on the other agreements; no reference is made to the fact that the consideration for the contract of sale was other than the payment of $36,663.15. Moreover, a separate "consideration," as labelled by the parties, was provided for the establishment of a servitude of air. *Cf. Ramírez* v. *Gautier*, *ante*, p. 470.

The trial court erred in appraising the parcel of 500 square meters at the rate of $1.65 per square meter. It having been stipulated that its market value on the condem-

nation date was $20 per square meter, judgment will be rendered accordingly, that is, the value shall be determined at the sum of $10,000 for the purposes of fair and reasonable compensation. Since appellant enjoyed the sum of $5,500 originally deposited until February 19, 1960, when she reimbursed the same in compliance with the order of December 15, 1959, the interest which plaintiff is bound to pay under § 5(b) of the Condemnation Act, as amended, 32 L.P.R.A. § 2908; *People* v. *Soc. Agric. Mario Mercado e Hijos*, 72 P.R.R. 740 (1951) ; *Housing Authority* v. *Sagastivelza*, 72 P.R.R. 262 (1951), shall be computed as follows: on $4,500, from the taking date until payment in full; and on $4,631.07, from February 19, 1960 until payment in full.