# BROWN ET AL. *v.* UNITED STATES.

# UNITED STATES *v.* BROWN ET AL.

**ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF IDAHO.**

Nos. 97 and 98. Argued October 19, 1923.—Decided November 12, 1923.

1. Where establishment of a reservoir under the Reclamation Act involved flooding part of a town, the United States had constitutional power to take by condemnation other private land near by, in the only practicable and available place, as a new townsite to which the buildings affected could be moved at the expense of the United States and new lots be provided in full or part satisfaction for those flooded. P. 81.

2. The fact that, as an incident of such a readjustment, there may be some surplus lots of the new townsite which the Government must sell, does not characterize the condemnation as a taking of one man's property for sale to another. P. 82.

3. When the award in condemnation is for the value of the property as of the date of the summons without regard to the damage arising from the owner's inability to sell or lease during the proceedings, and, under the applicable state law, the Government may obtain possession promptly after bringing suit, interest from date of summons to judgment may be allowed on the award, even though the owner remained in possession, cultivating and gathering crops meanwhile. P. 84.

4. While, *semble,* the Act of 1888, in directing federal courts to conform their practice and procedure in condemnation "as near as may be" to that of the State where the property is, does not bind them to follow state statutes allowing interest on the award, interest in this case, at 7%, was properly included, in fixing just compensation. P. 86.

279 Fed. 168, affirmed.

WRITS of error, by both sides, to review a judgment of the District Court in a condemnation case.

*Mr. J. H. Peterson,* with whom *Mr. T. C. Coffin* was on the brief, for Brown et al.

The United States is without power to condemn land for the purposes of a town site under the circumstances set out in the record.

Under the most liberal definitions, the taking proposed could not be construed to be for a public use.

" It is conceded on all hands that the legislature has not power in any case to take the property of one individual and pass it over to another without reference to some use to which it is to be applied for the public benefit." Cooley's Const. Lim., 6th ed., p. 651.

The public use necessary cannot be found in the business speculation involved in the transaction. Nichols, Eminent Domain, p. 178.

If there is any other purpose except a desire to salvage a portion of the movable property in the old town site and to reduce the expenditure for a public improvement, it must be found in the solicitude of the Government for the residents of the old town site. This likewise cannot be construed to be a public use, because, in any event, its benefit accrues to a very limited number of people. There would seem to be necessarily some limit beyond which even the Federal Government should not be permitted to go in taking private property under an " exigency created by rapid development." Nichols, Eminent Domain, p. 149; *Chicago & N. W. Ry. Co.* v. *Cicero,* 157 Ill. 48; *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371; *Jones* v. *Tatham,* 20 Pa. St. 398; *Opinion of Justices,* 204 Mass. 607; *Richmond* v. *Carneal,* 129 Va. 388.

*Mr. W. W. Dyar,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

Mr. Chief Justice Taft delivered the opinion of the Court.

These are cross writs of error to a judgment of the District Court of Idaho in a condemnation case. The plaintiffs in error are owners of a tract of 120 acres, which was the object of the suit by the United States. The jury rendered a verdict of $6,250.00 for the plaintiffs, and the court added $328.00 as interest at seven per cent., from the date of the issuing of the summons to that of the judgment. The plaintiffs denied the power of the Congress under the Federal Constitution to condemn the land because not taken for a public use. This entitled them to come to this Court under § 238 of the Judicial Code; and so the United States sued out a cross writ of error to question the legality of including in the judgment the interest item.

Plaintiffs' tract lies just outside the present limits of American Falls in Idaho. The town has 1,500 people and is so situated in the valley of the Snake River that three-fourths of the town, or 640 acres, will be flooded by the waters of a reservoir which the United States proposes to create, for irrigation of its arid public land, by damming the waters of the river.

The Sundry Civil Act of March 4, 1921, c. 161, 41 Stat. 1367, 1403, appropriates $1,735,000 in addition to an unexpended balance for the continuation of the construction and extension of the irrigation system called the Minidoka Project, "with authority in connection with the construction of American Falls Reservoir, to purchase or condemn and to improve suitable land for a new town site to replace the portion of the town of American Falls which will be flooded by the reservoir, and to provide for the removal of buildings to such new site and to plat and to provide for appraisal of lots in such new town site and to exchange and convey such lots in full or part payment for property to be flooded by the reservoir and to sell for not less than the appraised valuation any lots not used for such exchange."

The United States has purchased 410 acres for the new town site and needs 165 acres more of which plaintiffs' tract of 120 acres is part. Negotiations for purchase from the plaintiffs failed, as they demanded $24,000.

The plaintiffs contend that the power of eminent domain does not extend to the taking of one man's property to sell it to another, that such an object can not be regarded as for a public use of the property, and, without this, appropriation can have no constitutional validity. The District Court held that the acquisition of the town site was so closely connected with the acquisition of the district to be flooded and so necessary to the carrying out of the project that the public use of the reservoir covered the taking of the town site. We concur in this view.

The circumstances of this case are peculiar. An important town stood in the way of a necessary improvement by the United States. Three-quarters of its streets, alleys and parks and of its buildings, public and private, would have to be abandoned. The buildings could not be moved except to the gradually rising ground east of the Snake River. There was a bluff one hundred feet high on the other side of the river. The tract of four hundred and seventy-five acres selected for the new town site was the only practical and available place to which the part of the town to be flooded could be moved so as to be united with the one-quarter of the old town which would be left. American Falls is a large settlement for that sparsely settled country and it was many miles from a town of any size in any direction. It was a natural and proper part of the construction of the dam and reservoir to make provision for a substitute town as near as possible to the old one.

No one would say that a legislative act authorizing a railway company to build a railroad exceeds the constitutional limit by reason of a specific provision that the

company may condemn land not only for the right of way but also additional land adjacent thereto for use as borrow pits in making fills and embankments, or for use as spoil banks or dumps for the earth excavated from tunnels and cuts. Such adjacent land would certainly be devoted to the public use for which the railway was being constructed. If so, then the purchase of a town site on which to put the people and buildings of a town that have to be ousted to make the bed of a reservoir would seem to be equally within the constitutional warrant. The purchase of a site to which the buildings of a town can be moved and salvaged and the dispossessed owners be given lots in exchange for their old ones is a reasonable adaptation of proper means toward the end of the public use to which the reservoir is to be devoted. The transaction is not properly described as the condemnation of the land of one private owner to sell it to another. The incidental fact that, in the substitution and necessary adjustment of the exchanges, a mere residuum of the town-site lots may have to be sold does not change the real nature of what is done, which is that of a mere transfer of the town from one place to another at the expense of the United States. The usual and ordinary method of condemnation of the lots in the old town, and of the streets and alleys as town property, would be ill adapted to the exigency. It would be hard to fix a proper value of homes in a town thus to be destroyed without prospect of their owners' finding homes similarly situate on streets in another part of the same town or in another town near at hand. It would be difficult to place a proper estimate of the value of the streets and alleys to be destroyed and not to be restored in kind. A town is a business center It is a unit. If three-quarters of it is to be destroyed by appropriating it to an exclusive use like a reservoir, all property owners, both those ousted and those in the remaining quarter, as well as the State, whose subordinate agency of government is the munici-

pality, are injured. A method of compensation by substitution would seem to be the best means of making the parties whole. The power of condemnation is necessary to such a substitution.

The circumstances of this case are so peculiar that it would not be surprising if no precedent could be found to aid us as an authority. There is one, however, which presents a somewhat close analogy. In *Pitznogle* v. *Western Maryland R. R. Co.*, 119 Md. 673, a railroad company condemned a piece of land for its tracks and yards and in doing so appropriated a private right of way which was the only access of certain other land owners to the public highway. It was held that the railway company could condemn an additional strip of land for a substitute right of way to be furnished to these land owners. In reaching this conclusion the court said:

" The condemnation of a part of this land, here sought to be condemned, for a substitute private road or way is incident to and results from the taking, by reason of public necessity, of the existing private road for public use, and the use of it for such purposes should, we think, be regarded as a public use within the meaning of the Constitution ".

Our conclusion is not in conflict with that class of cases with which the Justices of the Supreme Judicial Court of Massachusetts dealt in the *Opinion of Justices*, 204 Mass. 607. It was there proposed that the City of Boston, in building a street through a crowded part of the city, should be given power to condemn lots abutting on both sides of the proposed street with a view to sale of them after the improvement was made, for the promotion of the erection of warehouses, mercantile establishments and other buildings suited to the demands of trade and commerce. The Justices were of opinion that neither the development of the private commerce of the city nor the incidental profit which might enure to the

city out of such a procedure could constitute a public use authorizing condemnation. The distinction between that case and this is that here we find that the removal of the town is a necessary step in the public improvement itself and is not sought to be justified only as a way for the United States to reduce the cost of the improvement by an outside land speculation.

The remaining question in this case arises on the cross writ of error of the United States by which exception is taken to the court's having included in the judgment interest at seven per cent. on the value of the property, as found by the jury, from the date of the issuing of the summons until the date of the judgment. The land remained in the possession of the owners up to date of the judgment and they cultivated the land meantime and gathered crops therefrom.

The District Court, in directing the jury, followed the law of the State (§ 7415, Compiled Laws of Idaho, 1919; § 5221, Idaho Revised Codes, 1908) in which the land lay and the court was sitting, as follows:

"For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value, at that date, shall be the measure of compensation for all property to be actually taken. . . . No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or damages."

The Idaho statute has been construed by the Circuit Court of Appeals of the Ninth Circuit to justify the court in adding interest upon the value fixed by the jury from the date of the summons until the judgment. *Weiser Valley Land & Water Co.* v. *Ryan,* 190 Fed. 417, 424. The court said:

"Having such right to compensation at a given time, it would seem that the owner ought to have interest up⸺

the amount ascertained until paid. In the meanwhile he can claim nothing for added improvements, nor is he entitled to any advance that might affect the value of the property."

Counsel for the United States cite against such a ruling the case of *Shoemaker* v. *United States,* 147 U. S. 282, 321, wherein, in a District of Columbia condemnation, there being no specific statute on the subject, it was held that no interest should be paid to the owner until the taking. The court said:

" It is true that, by the institution of proceedings to condemn, the possession and enjoyment by the owner are to some extent interfered with. He can put no permanent improvements on the land, nor sell it, except subject to condemnation proceedings. But the owner was in receipt of the rents, issues, and profits during the time occupied in fixing the amount to which he was entitled, and the inconveniences to which he was subjected by the delay are presumed to be considered and allowed for in fixing the amount of the compensation. Such is the rule laid down in cases of the highest authority."

This was followed in *Bauman* v. *Ross,* 167 U. S. 548, 598, in which Mr. Justice Gray, speaking for the Court in reference to the validity of a statute providing for condemnation proceedings in the District of Columbia, said:

" The payment of the damages to the owner of the land and the vesting of the title in the United States are to be contemporaneous. The Constitution does not require the damages to be actually paid at any earlier time; nor is the owner of the land entitled to interest pending the proceedings."

In these cases, the value found was at the time of taking or vesting of title and the presumption indulged was that the valuation included the practical damage arising from the inability to sell or lease after the blight of the

summons to condemn.   Where the valuation is as of the
date of the summons, however, no such elements can
enter into it and the allowance of interest from that time
is presumably made to cover injury of this kind to the
land owner pending the proceedings.   It often happens
that in the delays incident to condemnation suits the loss
to the owner arising from the delay between the summons
and the vesting of title by judgment is a serious one.
The interest charge under the Idaho statute has the whole-
some effect of stimulating the plaintiff in condemnation
to prompt action.   Moreover the plaintiff may reduce to
a minimum the rents and profits enjoyed by the defend-
ant because, under the Idaho statute, the plaintiff may
have a summary preliminary hearing before commis-
sioners to fix probable damages and, by depositing the
amount so fixed with the clerk of the court, if the defend-
ant will not accept it, the plaintiff may obtain immediate
possession.   Within less than a month after bringing
suit, he can thus appropriate to himself the rents and
profits of the land, and in enjoyment of them can await
the final judgment.   Idaho Compiled Statutes, 1919, Vol.
2, § 7420; Idaho Revised Codes, 1908, Vol. 2, § 5226.

It is urged, however, that the federal conformity statute
as to condemnation suits, which directs federal courts to
conform the practice and procedure " as near as may
be " to that of the courts of the State where the land is,
does not require or authorize the federal courts to allow
interest to the property holder except according to the
rule laid down in the *Shoemaker Case,* the *Bauman Case,
Seaboard Air Line Ry. Co. v. United States,* 261 U. S. 299,
305, and *United States v. Rogers,* 255 U. S. 163, in all of
which interest was allowed only from the time of taking
or vesting of title; that this is a matter of substance which
a conformity statute was not intended to cover, as appears
from the language of the opinions in the last two cases.
It will be observed, however, that in those two cases the

allowance of interest did conform to the state statutes, and that this was given by the Court as an additional reason for sustaining its conclusion. It is doubtless true that the conformity provision of the Act of 1888 does not bind the federal courts to follow the state statute in the matter of interest. But the disposition of federal courts should be to adopt the local rule if it is a fair one, and, as already indicated, we are not able to say that with the value fixed as of the date of summons, and the opportunity afforded promptly thereafter to take possession, interest allowed from the date of the summons is not a provision making for just compensation. *North Coast R. R. Co.* v. *Aumiller*, 61 Wash. 271, 274. In *United States* v. *Sargent*, 162 Fed. 81, the Government condemned land in Minnesota for a post office. Under the statute of that State the hearing was before three commissioners who were to report the damages sustained on account of the taking. Unless this resulted in payment and settlement, a hearing before a court or jury followed and judgment was entered on that, and possession was given on payment of the judgment, which included costs and interest from the time of filing the commissioners' report. The commissioners' report was filed June 12, 1907, the report was confirmed August 19, 1907, and interest was allowed from June 12th until the date when the damages were paid into the registry of the court. The Circuit Court of Appeals thought the rule a fair one. Speaking by Judge Adams (162 Fed. 84), it said:

" Considerable time may elapse after the commissioners fix the value of the land before i' is ultimately paid for. They can only fix it as of the ime they act. They can not say what it will be at any definite time in the future. The value may for many reasons change, and the rental value may be materially affected by the tenure of the owner rendered uncertain by possible protracted litigation. Considerations like these doubtless

˙ ˡ ᵎ᷑ted the Legislature of the state to provide that the amount of the award should bear interest until paid as the best and fairest available method of providing against the possible consequences just suggested. Without holding that the requirement for payment of interest is one of the 'modes of proceeding' which, by section 2 of the act of August 1, 1888, is made compulsory upon the courts of the United States, we are satisfied to conform to it as a palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely, of making 'just compensation' · for the land as it stands, at the time of taking. 'The time of taking' under the Minnesota statute, *supra,* is when the payment is made for it. . . . It is better, when possible, to act in harmony rather than in conflict with the established policy of a state."

In the last opinion of this Court on the question of interest in the appropriation of land by the United States, that in *Seaboard Air Line Ry.* v. *United States,* 261 U. S. 299, 306, the case of *United States* v. *Sargent* and part of the language above quoted is cited with approval.

*Judgment affirmed.*