**UNITED STATES of America,**
**Plaintiff,**

v.

**10.47 ACRES OF LAND, MORE OR LESS, Situated IN the CITY OF DO-VER AND TOWN OF MADBURY, STRAFFORD COUNTY, STATE OF NEW HAMPSHIRE, and Marie R. Davis, et al., and Unknown Owners, Defendants.**

**Civ. A. No. 1922.**

United States District Court
D. New Hampshire.
Dec. 22, 1962.

William H. Craig, Jr., U. S. Atty., and Paul L. Normandin, Asst. U. S. Atty., Concord, N. H., for the United States.

Stanley M. Burns, Dover, N. H., for defendants.

GIGNOUX, District Judge, serving by designation.

This proceeding was instituted by the United States of America, on behalf of the Secretary of the Air Force, to condemn certain lands of the defendants situated in Dover and Madbury, New Hampshire, in order to provide for additional facilities in connection with Pease Air Force Base, Rockingham County, New Hampshire. The complaint and declaration of taking, together with the estimated just compensation, were filed and deposited with the Court on April 18, 1958, and on the same day the Court entered an order for immediate posses-

sion. Authority for the taking was asserted by virtue of various federal statutes, including the Declaration of Taking Act of February 26, 1931, 40 U.S.C. § 258a–e, and the general Condemnation Act of August 1, 1888, 40 U.S.C. § 257.[1]

On May 6, 1958 defendants filed an answer contesting the taking, and seeking both dismissal of the proceedings and a court order revesting title to the lands taken in the defendants as the former owners. By its Rescript and Order dated February 12, 1959, this Court, Connor, J., resolved in plaintiff's favor most of the questions raised by the various defenses asserted by defendants in their answer,[2] and at a pre-trial conference held before me on October 23, 1962, the parties agreed that the only issues remaining between them are as follows:

"Whether or not there was a valid taking of said land by the plaintiff (1) in view of the fact that the purpose of the taking was to acquire a substitute water supply for the City of Portsmouth, New Hampshire, a portion of whose water supply had been previously acquired by the plaintiff in connection with its original acquisition of land for the construction of Pease Air Force Base, and (2) in view of the further fact that the plaintiff has discontinued its efforts to develop said land for such purpose."

1. The complaint and declaration also rely upon Sections 2663 and 9773 of Title 10, United States Code, which authorize the acquisition of land for military purposes; the Military Construction Authorization Act, 1952, approved September 28, 1951, 65 Stat. 336, which authorized the acquisition of land for construction of Pease Air Force Base (then known as Portsmouth Municipal Airport); and the Second Supplemental Appropriation Act, 1952, approved November 1, 1951, 65 Stat. 760, which appropriated funds for such purpose. Additionally, plaintiff relies upon Section 301 of Pub. L. 85–241, approved August 30, 1957, 71 Stat. 548, which appropriated additional funds for Pease Air Force Base.

2. The Court held, contrary to defendants' contentions, that the taking of defend-

ants' lands was authorized by the statutes in existence on April 18, 1958; that this authority was not negated by the subsequent enactment of the Military Construction Appropriation Act, 1959, approved August 28, 1958, 72 Stat. 1097–98, which appropriated funds for construction of the Bellamy River Dam, so called; that the complaint and declaration of taking complied with the requirements of Fed.R.Civ.P. 71A and the Declaration of Taking Act, 40 U.S.C. § 258a; that the necessity of the taking was not a judicial question; and that the Court had jurisdiction of the proceeding under the Declaration of Taking Act, 40 U.S.C. § 258a. Despite the efforts of defendants' counsel to reargue these questions in his briefs, I am restricting my inquiry to the issues presented by the pre-trial order, infra. Fed.R.Civ.P. 16.

At the pre-trial conference, the parties further agreed as to defendants' ownership of the lands taken as of April 18, 1958, and stipulated as to the amount of the just compensation to be paid to defendants on account of the taking in the event it should be finally determined by the Court that title to the condemned premises remains in plaintiff.

The following stipulated facts form the background of this proceeding: In connection with the construction of Pease Air Force Base, it was deemed necessary that plaintiff acquire certain lands on which was located a portion of the water supply system of the City of Portsmouth, New Hampshire. On January 27, 1954, after extended negotiations, plaintiff and the City of Portsmouth entered into a contract by which the City agreed to convey said lands to plaintiff, and plaintiff agreed to construct for the City a substitute water supply system by the development of wells on other lands to be acquired by plaintiff. When the well development contemplated by the contract failed to produce the required quantity of water, plaintiff undertook to develop a new source of water supply by constructing a new series of wells on the land which is the subject of this proceeding. The instant proceeding was instituted by plaintiff for the purpose of acquiring this land as a source of water supply for the City in fulfillment of plaintiff's obligation under the agreement of January 27, 1954.[3] Following the taking, plaintiff commenced development of wells upon the condemned land, but, before completion of the project, discontinued the development because of the construction by plaintiff of the Bellamy River Dam, so called,[4] which rendered further development of this project unnecessary. Plain-

tiff has no further use for this land and proposes to dispose of it as surplus property.

With respect to both of the questions which remain for my consideration, I find that defendants' position is clearly without merit:

I. Controlling decisions of the United States Supreme Court have long since settled that a substitute taking such as that involved here, which is closely connected with and necessary to the carrying out of a conceded public use, is for a public and not a private purpose, and is hence a legal taking. United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946); Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930); Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923). See 2 Nichols, Eminent Domain, § 7.226 (3d ed. 1950). Cf. United States v. Board of Education, 253 F.2d 760 (4th Cir. 1958). This record furnishes no support for defendants' unsubstantiated assertion that plaintiff in taking their lands acted in bad faith or so " 'capriciously and arbitrarily' " that its action was "without adequate determining principle or was unreasoned." No such issue is present here. Cf. United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 91 L.Ed. 209 (1946).

II. By the terms of the Declaration of Taking Act, " * * * Upon the filing said declaration of taking and of the deposit in the court * * * title * * * shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto * * *." 40 U.S.C. § 258a[5] The effect of this

---

3. On August 3, 1960 plaintiff and the City entered into Supplemental Agreement No. 2 to the contract of Jan. 27, 1954, which provided for the substitution of other sources in the event the well development originally contemplated proved insufficient.

4. Funds for which were appropriated by the Military Construction Appropriation

Act, 1959, approved August 28, 1958, 72 Stat., 1097–98.

5. 40 U.S.C. § 258a
" * * * Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple ab-

provision is to transfer to the United States as of the date of taking the title to the condemned lands, or such lesser interest as is specified in the declaration, subject only to the right of the owner to challenge the validity of the taking as not being for an authorized purpose. Catlin v. United States, 324 U.S. 229, 239–44, 65 S.Ct. 631, 89 L.Ed. 911 (1945); City of Oakland v. United States, 124 F.2d 959 (9th Cir. 1942). Clearly, the subsequent abandonment by the United States of the purpose for which the lands were taken cannot affect the validity of the original condemnation. Title to the premises having vested in the United States by a valid taking, the Court is without authority to order the revesting of title in the original owners, a matter entrusted by the Congress to the discretion of the Attorney General. 40 U.S.C. § 258f [6].

I hold that plaintiff took the lands here involved for a valid public purpose, and that the subsequent discontinuance by plaintiff of its efforts to develop the lands for such purpose neither rendered the original taking invalid nor caused title to revert to defendants.

In accordance with the foregoing, and the stipulations of the parties to which reference has been made, I find as follows:

(1) That the filing of the declaration of taking, together with the deposit of the amount of the estimated just compensation, in this Court on April 18, 1958 vested in the United States of America the full interest in and to the property therein described, and vested in the defendants the right to just compensation for said taking as of April 18, 1958.

(2) That the defendants were the owners of said property as of April 18, 1958,

the date of said taking, and are entitled to just compensation therefor in the respective amounts set forth in the stipulation of the parties dated November 9, 1962 and filed in this Court on the same date, which amounts represent just compensation to be paid by the United States of America on account of said taking.

Plaintiff will submit a form of judgment in accordance herewith.

---

solute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto * * *."

6. 40 U.S.C. § 258f
  "In any condemnation proceeding instituted by or on behalf of the United States, the Attorney General is authorized to stipulate or agree in behalf of the United States to exclude any property or any part thereof, or any interest therein, that may have been, or may be, taken by or on behalf of the United States by declaration of taking or otherwise."