**CITY OF HOUSTON, Appellant,**

v.

**RELIGIOUS OF THE SACRED HEART OF TEXAS, et al., Appellee.**

**No. 01–90–00089–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 20, 1991.

Rehearing Overruled July 18, 1991.

Joseph G. Rollins, Robert P. McConnell, Olson & Olson, Houston, for appellant.

Marie Yeates, Dixon Montegue, Vinson and Elkins, Houston, for appellee.

Before SAM BASS, STEPHENS[1] and PRICE, JJ.

## OPINION

PRICE, Justice.[2]

City of Houston, (hereinafter, "City"), appeals a jury condemnation judgment in favor of Religious of the Sacred Heart of Texas, et al. (hereinafter "Duchesne").

Duchesne is a nonprofit Texas corporation providing private, multi-denominational schooling for girls from pre-kindergarten through 12th grade. Duchesne has been operating the school since March of 1960, when it purchased the original 14.786 acres of its campus. In 1988, the City filed a statement of condemnation for 1.479 acres of Duchesne's campus to extend a public street, Chimney Rock Road, from Memorial Drive to the Katy Freeway. The condemned property contained buildings, parking lots, and a playground area. The street also severed a .689 acre portion on the eastern boundary from the rest of the campus, making it unusable. The total amount of acreage condemned or severed

1. The Honorable Bill Stephens, retired appellate justice, Court of Appeals, Fifth Judicial District at Dallas, Texas, sitting by assignment.

2. The Honorable Frank C. Price, former appellate justice, Court of Appeals, First Judicial District, at Houston, Texas, sitting by assignment.

was 2.168 acres, leaving 12.618 acres of campus area.

A three person commission was appointed by the county court at law and hearings were held to determine the amount of compensation to be paid Duchesne. The commission determined this amount to be $7,250,000. Both parties appealed the award to the county court at law, and a jury awarded Duchesne $18,451,398. The City's motion for new trial was overruled and this appeal was filed.

The City's points of error one through eight contend that the trial court applied the incorrect standard for determining the damages to compensate Duchesne for the taking of its property. The trial court applied the "substitute facilities" doctrine which, the City maintains, allowed for an excessive damage award. The City argues that the substitute facilities measure is not intended to be applied to private landowning condemnees as it results in a windfall rather than the "adequate" compensation required by the Texas Constitution or the "just" compensation required by the fifth amendment. Duchesne argues the compensation measure was correct, but, if incorrect, the City waived its complaint.

Prior to trial, the trial judge heard a motion filed by the City to disallow all evidence and testimony that supported a theory of recovery based on substitute facilities. The trial court denied the City's motion. The City then filed a supplemental petition contesting the use of a substitute facilities measure of damages. During voir dire, the City objected to the trial court's instruction to the jury panel that the "substitute facilities" measure of compensation would be applied in the case. The City objected to the testimony of Duchesne's witnesses whenever "substitute facilities" was discussed. The City requested the court to instruct the jury on the fair market value of the land taken and the damages to the land remaining. This request was denied, and the trial court instructed the jury to apply the substitute facilities theory to award damages. The City objected to this instruction. After the trial, the City filed a motion for new trial, again objecting to the use of the substitute facilities doctrine, which the trial court overruled.

It is well settled that the power of eminent domain allows governmental entities to take, damage, or destroy property for public use subject to the right of the owner to recover "just" or "adequate" compensation. *See Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 9, 104 S.Ct. 2187, 2193, 81 L.Ed.2d 1 (1984); *City of San Antonio v. Congregation of Sisters of Charity of the Incarnate Word, Inc.,* 404 S.W.2d 333, 334 (Tex.Civ.App.—Eastland 1966, no writ). The idea of just compensation is to put the owner of condemned property "in as good a position pecuniarily as if his property had not been taken." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). There are two distinct condemnation situations: (a) the taking of the whole tract of land and (b) the taking of only a part. *City of LaGrange v. Pieratt,* 142 Tex. 23, 175 S.W.2d 243, 245 (1943). In most cases, "just" or "adequate" compensation means fair market value of the property on the date it was appropriated. *United States v. 564.54 Acres of Land,* 441 U.S. 506, 511, 99 S.Ct. 1854, 1857, 60 L.Ed.2d 435 (1979) [hereinafter cited as *"Lutheran Synod"*].

■ The general rule in determining damages or arriving at just compensation, where only a portion of a person's land is taken, is to add the fair market value of the part taken to the difference between the fair market value of the remainder immediately before and immediately after the taking. *Callejo v. Brazos Elec. Power Coop., Inc.,* 755 S.W.2d 73, 76 (Tex.1988); *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 197 (1936). The value of the part taken should be ascertained by considering that portion alone, and not as a part of the larger tract or reduced by any estimated benefits to the remaining land. *State v. Meyer,* 403 S.W.2d 366, 375 (Tex. 1966); *Roberts v. State,* 754 S.W.2d 477, 479 (Tex.App.—San Antonio 1988, writ denied); *State v. Enterprise Co.,* 728 S.W.2d 812, 812 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

"Fair market value" entitles the owner to receive the amount that a willing buyer would pay in cash to a willing seller at the time of the taking. *Lutheran Synod*, 441 U.S. at 511, 99 S.Ct. at 1857; *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex.1972). The determination of fair market value may be influenced by factors which would affect the price a prudent and willing buyer and seller would exchange for the property exclusive of the fact of condemnation. *City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex.1974). The amount of compensation is not to be enhanced or diminished by the project that initiated the condemnation proceedings. *Barshop v. City of Houston*, 442 S.W.2d 682, 685 (Tex.1969); *Thurow v. City of Dallas*, 499 S.W.2d 347, 349 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.).

In some cases, the fair-market-value standard fails to fully indemnify the owner, particularly when the property has some special value to the owner because of its adaptability to his particular use. *United States v. Miller*, 317 U.S. 369, 374–75, 63 S.Ct. 276, 280–81, 87 L.Ed. 336 (1943). Such occasional inequity is tolerated because of the difficulty of assessing the special and unique value an individual places upon a particular piece of property and because of the need for clear, easily administrable rules governing the measure of "just compensation." *Lutheran Synod*, 441 U.S. at 511–12, 99 S.Ct. at 1857–58. It is necessary to strike a fair balance between the public's need and the claimant's loss. *Id.* However, market value is not the sole measure of just compensation. Other measures of compensation have been employed, primarily when market value is too difficult to establish, or when its application would result in manifest injustice to the owner or the public. *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707 (1950).

One such alternative measure is the substitute facilities doctrine. The doctrine is unrelated to fair market value and does not necessarily depend on whether fair market value is readily ascertainable. Instead, it demands additional compensation over and above market value in order to allow the replacement of the condemned facility. *United States v. Certain Property in Borough of Manhattan*, 403 F.2d 800, 803 (2d Cir.1968). It has been applied mostly in those situations where public facilities that could not be readily bought on the market, i.e., streets, sewage treatment plants, etc., have been condemned. *Lutheran Synod*, 441 U.S. at 513, 99 S.Ct. at 1858. The basic premise is that the condemnee is under some obligation to continue the function performed on the taken property.

The "substitute facilities doctrine" arose from dictum in the United States Supreme Court decision in *Brown v. United States*, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923). The construction of a reservoir on the Snake River flooded 640 acres or three-quarters of the town of American Falls, Idaho. The government relocated the town residents. The owners of the land condemned for that purpose challenged the move as a transfer of private property to other private persons, and not a transfer "for public use," as required by the fifth amendment. The Court held that, under the circumstances involved in that case, "a method of compensation by substitution would seem to be the best means of making the parties whole." *Brown*, 263 U.S. at 82–83, 44 S.Ct. at 93–94.

Only two Texas appellate court cases discuss the doctrine, as applied to school property taken for state highways. *State v. Waco Indep. School Dist.*, 364 S.W.2d 263 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.) (without regard to fair market value, damages reflecting the cost to replace the facilities taken were awarded); *Congregation of Sisters of Charity*, 404 S.W.2d at 335 (dictum applied substitute facilities doctrine to private schools).

The United States Supreme Court has since rejected the application of a "substitute facilities" compensation when there is evidence of a fair market value for the property involved. *See United States v. 50 Acres of Land*, 469 U.S. 24, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984) (city landfill taken as part of flood control project); *Lutheran*

*Synod,* 441 U.S. at 512, 99 S.Ct. at 1857 (church campground taken for public recreational facilities). Upon examining the doctrine, the Court quotes Justice Frankfurter in *Kimball Laundry Co. v. United States,* 338 U.S. 1, 5, 69 S.Ct. 1434, 1437, 93 L.Ed. 1765 (1949):

> The value of property springs from subjective needs and attitudes; its value to the owner may therefore differ widely from its value to the taker. Most things however, have a general demand which gives them value transferable from one owner to another. As opposed to such personal and variant standards as value to the particular owner whose property has been taken, this transferable value has an external validity which makes it a fair measure of public obligation to compensate the loss incurred by an owner as a result of the taking of his property for public use. In view, however, of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for the property or idiosyncratic attachment to it, like loss due to an exercise of the police power, is properly treated as part of the burden of common citizenship.

The subjective elements in the formula for determining the cost of reasonable substitute facilities enhances the risk of error and prejudice and diverges from the principle that just compensation is measured by an objective standard that disregards subjective values which are of significance only to the individual owner. *50 Acres of Land,* 469 U.S. at 35–36, 105 S.Ct. at 457–458. To allow substitute facilities to apply to a private entity, would be to allow the entity to allocate its resources to serve its own institutional objectives, which may or may not correspond with community needs. Awarding replacement cost on the theory that the entity would continue to operate its service would thus provide a windfall if substitute facilities were never acquired, or, if acquired, were later sold or converted to another use.

■ All of the evidence adduced by Duchesne was related to the intrinsic value of the "educational environment," and to the purchase of the adjacent 7.9073 acre tract of the Memorial Creole Apartments. Nontransferable values arising from an owner's unique need for the property are not compensable. *Lutheran Synod,* 441 U.S. at 511–512, 99 S.Ct. at 1857–1858. The jury's verdict was based on testimony that the adjacent land would cost $12,055,470 and demolition and construction costs would be $7,733,775. This verdict, based on the substitute facilities doctrine, would provide Duchesne with new buildings and 5.739 acres more land than they owned before the condemnation. The guiding principle of just compensation is that the owner of the property is entitled to be made whole, but not entitled to more. *Olson,* 292 U.S. at 246, 54 S.Ct. at 704. As the verdict stands, Duchesne has received a windfall with no obligation to purchase the adjoining property or even to operate the school at this or any other location.

Duchesne contends, however, that the City waived any right to complain about the application of the substitute facilities doctrine when it argued that the measure of damages should be the value of the land taken plus the "cost to cure the land not taken." Duchesne says that this is the same as its "substitute facilities" argument and, therefore, the issue of measurement of damages was tried by consent.

■ The City put on evidence of the fair market value of the land taken, and the cost to cure the damage to the land not taken, by calculating the replacement cost of the demolished buildings, parking lots, and playground area, utilizing the remaining campus area. Unlike Duchesne's approach, which included the psychological and environmental impact necessitating the purchase of adjacent property, the cost of demolishing existing structures on that adjacent property, and relocating the campus facilities, the City's approach did not include the purchase price, or the relocation cost, of new or additional property. The cost to cure approach is an appraisal technique used to arrive at the market value of the property taken and the diminished market value of the remainder, which includes

the cost to replace improvements taken, damaged, or destroyed, after they have been appropriately depreciated. We hold that the City's method for determining damages by using the cost to cure approach is not the same as Duchesne's substitute facilities approach.

We find no circumstances here that require suspension of the normal method for determining just compensation, i.e., the fair market value of the land taken plus the difference between the fair market value of the remainder immediately before and immediately after the taking. We further find that a market value is not too difficult to establish nor would its application result in manifest injustice to Duchesne. Duchesne is not entitled to recover for nontransferable values arising from its unique need for property. Allowing them the fair market value of the property is consistent with the principles of fundamental fairness.

Because the improper measure of compensation was used throughout the trial, and the jury was never allowed to make the proper value determinations, we find reversible error. TEX.R.APP.P. 81(b)(1). Appellant's points one through eight are upheld. The judgment is reversed and the cause is remanded, and a new trial is to be conducted using the proper condemnation standard, the fair market value of the property taken plus the difference between the value of the remainder immediately before and immediately after the taking. The remaining points of error are either moot upon retrial or need not be addressed.