**PRINCE WILLIAM COUNTY SERVICE AUTHORITY, Plaintiff,**

**v.**

**UNITED STATES of AMERICA, Defendant.**

**No. 90–312L.**

United States Claims Court.

April 17, 1992.

Haynie S. Trotter, Mclean, Va., for plaintiff.

Alan Brenner, Washington, D.C., with whom was Donald F. Rosendorf, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This action is before the court on defendant's motion in limine. Defendant seeks a pretrial ruling to preclude plaintiff from presenting evidence at trial intended to show that plaintiff is entitled to just compensation for the construction of a substitute regional sewer system.

## FACTS

The Prince William County Service Authority (PWCSA) was created by the Prince William County Board of Supervisors pursuant to the Virginia Water and Sewer Authorities Act, Va.Code Ann. § 15.1–1250 (Michie 1989), for the exclusive purpose of providing water and sewer services in Prince William County (the County). Both PWCSA's charter and a planning agreement executed between PWCSA and the Board of Supervisors required PWCSA to plan and construct facilities as necessary for the orderly provision of water and sewer services to the entire County.

In an effort to provide utility services to the Little Bull Run service area (Little Bull Run), a relatively undeveloped area in the western portion of the County, PWCSA coordinated with County zoning officials to design and route a sewer system to serve as broad an area as possible. To service Little Bull Run, PWCSA planned to construct a sewer transmission line down Route 29 from Little Bull Run to the neighboring William Center site where a utility system was already in place. That connector would then feed into the four-inch gravity line sewer installed across the William Center tract by the Hazel–Peterson Group, one of the developers of the property. A proposed permanent pumping station, to be located on the William Center tract near Interstate Highway 66, would then pump the sewage underneath Interstate Highway 66 into other facilities already constructed, and which were capable of carrying the projected capacity from the William Center tract and Little Bull Run onward to the regional treatment facility. On November 10, 1988, however, the William Center property was taken by act of Congress[1], precluding service to Little Bull Run by that route.

At the time of the legislative taking, PWCSA was record owner of water and sewer easements totalling 340,000 square feet (9.275 acres). The easements had been deeded to PWCSA by NV Homes, Perch Associates Limited Partnership, William Center Limited Partnership, and York Limited Partnership when the William Center property was rezoned for residential development. Prior to the date of the taking, 1,338 linear feet of ductile cast iron sewer pipe and 4,942 linear feet of water main had been installed in the easements. The pipe was actually installed at the developers' expense, but became the property of PWCSA upon installation in the utility easement. A temporary pumping station was constructed within a PWCSA utility easement, and a tunnel was excavated under Interstate Highway 66.

## DISCUSSION

### I. *Compensation under the Substitute Facilities Doctrine.*

The Constitution of the United States requires that "just compensation" be paid to a property owner whenever the government takes property for public use. U.S. Const. amend. V; *United States v. 50 Acres of Land*, 469 U.S. 24, 25, 105 S.Ct. 451, 452, 83 L.Ed.2d 376 (1984). The United States Supreme Court has held that the Constitution mandates that the owner be put in as good a position as if his property had not been taken. *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708,

---

1. Manassas Battlefield Park Amendments of 1988, 16 U.S.C.A. §§ 429b to 429b–5 (West 1974 & Supp.1992).

78 L.Ed. 1236 (1934). Normally, just compensation is measured as "the market value of the property at the time of the taking contemporaneously paid in money." *Id.* at 255, 54 S.Ct. at 708. Frequently, however, this fair market value test is unworkable because the subject property is not commonly bought and sold on the open market and is rarely operated for profit. In recognition of this unique problem, courts have developed the "substitute facilities" doctrine as an alternative valuation method in public condemnation proceedings. *Brown v. United States,* 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923); *United States v. Certain Property,* 403 F.2d 800 (2d Cir.1968); *United States v. Board of Educ.,* 253 F.2d 760 (4th Cir.1958); *Town of Clarkesville v. United States,* 198 F.2d 238 (4th Cir.1952). Under the substitute facilities doctrine, courts have recognized that the cost of providing necessary substitute facilities is a proper measure of just compensation if the condemnee has a duty to replace the condemned facility or if substitute facilities are reasonably necessary in the circumstances. *County of Sarpy v. United States,* 181 Ct.Cl. 666, 386 F.2d 453, 457 (1967). In other words, when the taking leaves the condemnee with no existing alternative means by which to meet its obligations to the community, the United States must compensate the condemnee for the cost of constructing a new facility to provide the service. *Id.* 386 F.2d at 457. However, when the condemnee is not required to provide substitute or replacement facilities, defendant argued that the proper measure of compensation is the salvage value of the condemned facilities. *Franklin County v. United States,* 341 F.2d 106 (5th Cir.1965); *Washington v. United States,* 214 F.2d 33 (9th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954); *United States v. New York,* 168 F.2d 387 (2d Cir.1948); *California v. United States,* 169 F.2d 914 (9th Cir.1948).

Neither party disputed the requirements for compensation under the substitute facilities doctrine. At issue was whether plaintiff's duty to provide sewer service to the Little Bull Run area triggered the substitute facilities doctrine. Defendant argued that plaintiff had no such duty because no development in Little Bull Run required servicing, nor was a sewer system for that area in place at the time of the taking. These facts are significant, defendant argued, because the law does not regard a condemnee's future plans to provide a service as a legal obligation to provide that service. *United States v. Streets, Alleys & Pub. Ways,* 531 F.2d 882 (8th Cir.1976). As to this interpretation, the Court of Claims has held that "the test is what is reasonable under all the circumstances to restore the County to substantially as good a position as it was prior to the taking, not what the County would prefer to have for long-range planning purposes, or what would be the most desirable." *Sarpy,* 386 F.2d at 460.

■ While plaintiff did not challenge the foregoing, it pointed out that courts have also said that the issue of whether substitute public facilities are reasonably necessary to replace those condemned by the government is a matter to be decided by the judicial trier of fact. *Streets, Alleys & Pub. Ways,* 531 F.2d at 886. Further, plaintiff urged that the facts of a particular case control the applicability of the substitute facilities theory of value. *Washington,* 214 F.2d at 39. From this disparate case law, the court finds that the means by which a condemnee should be compensated is not properly determined by a pretrial ruling. Plaintiff maintained that it was prepared to make the requisite showing of both the necessity of substitute facilities and its legal obligation to provide such facilities. The court concludes that plaintiff's arguments supported this contention, and therefore plaintiff is entitled to develop its theory of valuation fully at trial.

II. *Compensation Commensurate with the Cost of the Material and Installation of the Williams Center Tract.*

■ Defendant's motion in limine would also deny plaintiff the alternative of presenting evidence at trial showing that plaintiff was entitled to the cost of labor and materials used to construct the William Center Tract. Federal courts have held

that evidence of the original cost of utility systems is admissible as an element in the valuation of taken property. *See United States v. 190.71 Acres of Land*, 300 F.2d 52 (7th Cir.1962); *United States v. Savannah Shipyards*, 139 F.2d 953 (5th Cir.1944); *Stephenson Brick Co. v. United States*, 110 F.2d 360 (5th Cir.1940). Defendant, however, urged that plaintiff should not be compensated by this amount because Perch, not plaintiff, furnished these construction costs. Therefore, if plaintiff were to receive compensation for these costs, it would be unjustly enriched. As plaintiff pointed out, however, courts also have held that the source of funds to construct facilities which are taken is not relevant to the determination of just compensation to the owner. *See United States v. Certain Space*, 295 F.2d 381 (7th Cir.1961); *United States v. Five Parcels of Land*, 180 F.2d 75 (5th Cir.1950). According to these holdings, plaintiff may be entitled to compensation for the construction costs for the Williams Center Tract. The court concludes that plaintiff should be permitted to present its evidence at trial to explore this issue as well.

## CONCLUSION

Defendant asserted a plausible interpretation of just compensation law. The means by which another government entity is to be compensated for a taking, however, is not properly decided upon a pretrial motion. Therefore, the court will not deny plaintiff the opportunity to present evidence at trial showing that it is entitled to compensation for a substitute sewer facility, or in the alternative, for the cost of labor and materials used to construct the William Center Tract. Accordingly, defendant's motion in limine is denied.

IT IS SO ORDERED.